IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CW, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 3:10-cv-00087-PPS-CAN |
| | ) | |
| TEXTRON, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY
OF TEXTRON, INC.'S PRESENTED EXPERT, DR. MICHAEL WEINRAUB**

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), Plaintiffs move to exclude the opinions and testimony of Textron, Inc.'s ("Textron") presented expert, Dr. Michael Weinraub ("Dr. Weinraub").

**Introduction**

Plaintiffs' central objections to Dr. Weinraub's proffered expert opinions and testimony (his lack of qualification, and his unreliable and undisclosed methodology) are best summarized by Dr. Weinraub himself, with this admission most illustrative:

> **Q:    Do you consider yourself to be an expert in the field of
> vinyl chloride contamination?**
>
> **A:    I am not, I do not.**

(Weinraub dep. 26:2-5).[1]

Dr. Weinraub is accurate about his lack of qualification to offer expert testimony relating to vinyl chloride. Dr. Weinraub also admits (six times) to not being a medical toxicologist (132:24; 149:6-7; 151:23; 160:1, 5-6), and he confirms that he is not an expert or specialist in

---

[1] Citations within parentheses refer to Dr. Weinraub's deposition taken on October 25, 2012, which is attached hereto as Ex. B. As of the date of this filing, a final copy of the deposition transcript is not yet available so the citation is to the rough draft per agreement by counsel.

allergies (137:15-17). Despite these admitted limitations, Dr. Weinraub opines on areas involving vinyl chloride, dose, cancer, and allergies. As detailed below, Dr. Weinraub's other testimony further establishes that he is not qualified to offer opinions in this matter.

Dr. Weinraub's opinions and testimony should also be excluded because his methodology in reaching some opinions is undisclosed, and when disclosed, the methodology is not scientifically reliable. In fact, his methodology is based on assumptions that are contrary to the evidence. "An expert's opinion is subject to exclusion when it makes assumptions contrary to the evidence." *In Re Ready-Mix Concrete Antitrust Litigation*, 2009 U.S. Dist. Lexis 82043, *42 (S.D. Ind. Sept. 9, 2009). What is left is a set of "useless" conclusions without "a hint of inferential process". *Zamecnik v. Indian Prairie School District #204*, 636 F.3d 874, 881 (7th Cir. 2011)(*citing Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339-40 (7th Cir. 1989)).

Even acknowledging that "the test of reliability is a flexible one depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony", Dr. Weinraub's opinions are lacking supporting facts and demonstrated application of reliable principles and methods. *Daubert*, at 593. Consequently, Dr. Weinraub's opinions are not admissible and must be excluded.

## <u>Applicable Law</u>

The exclusion of expert testimony under Rule 702 is within the sound discretion of the trial judge. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

principles and methods, and (3) the witness has applied the
principles and methods reliably to the facts of the case.

In applying Rule 702, the court is to conduct a three-step analysis: First, whether the witness is qualified; second, whether the expert's methodology is scientifically reliable; and third, whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Myers v. Illinois Central Railroad Company*, 629 F.3d 639, 644 (7th Cir. 2010). As seen, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, at 595; *see also Smith v. Ford Motor Co*., 215 F.3d 713, 718 (7th Cir. 2000)("The court's gatekeeping function focuses on an examination of the expert's methodology.").

## Dr. Weinraub's Proffered Opinions

Dr. Weinraub's report[2] and deposition testimony is riddled with conclusions, subjective beliefs, and unsupported speculation. The primary opinions that he offers include the following for E.W.:[3]

> **A.**[4] – As specified below, I have determined to a reasonable degree of medical certainty that E.W.'s GI issues and GERD were more likely than not caused by a combination of cow and soy protein allergy, lactose intolerance, improper formula use and feeding technique for a child with E.W.'s feeding difficulties, and viral gastroenteritis and not by exposure to vinyl chloride. (Weinraub Report p. 5).

> **B.1.** – On a more probable than not medical basis, E.W. had cow and soy protein allergies contributing to and causing her vomiting and diarrhea, as well as gastrointestinal discomfort after formula feedings. (*Id*. at 6).

> **B.2.** – On a more probable than not medical basis, E.W. has lactose intolerance causing or contributing to her vomiting, diarrhea, bloating and abdominal discomfort. (*Id*. at 6).

---

[2] Dr. Weinraub's report is attached hereto as Ex. A.
[3] Plaintiffs have attempted to discuss all opinions and conclusions advanced by Dr. Weinraub. Given the nature of his report and testimony, some conclusions and opinions may not be discussed in this filing. To be clear, Plaintiffs are moving to exclude all opinions and testimony, even if not specifically addressed in this Motion.
[4] The lettering and numbering of the opinions is taken from Dr. Weinraub's report.

**B.3.** – E.W.'s GI issues were caused or contributed to in part by thickened formula with rice cereal in large bolus feeding (nipple with "x" cross opening) and not exposure to vinyl chloride. (*Id*. at 6).

**B.4.** – E.W.'s GI issues were not caused in part by chronic exposure to vinyl chloride because bleeding, inflammation or structural damage to the GI tract were not confirmed by observation or by sophisticated medical testing. (*Id*. at 7).

**B.5.** – On a more probable than not medical basis, E.W. had a community acquired viral illness that was the cause of her hospitalization for dehydration and diarrhea. (*Id*. at 9).

**B.6.** – E.W.'s GI issues were not caused by exposure to vinyl chloride because there is no evidence that vinyl chloride at the levels present in the well water consumed from the Woods' family well water causes GI conditions in children. (*Id*. at 9).

**C.** – On a more probable than not medical basis, E.W. does not exhibit signs of neurological damage from any cause, including exposure to vinyl chloride. (*Id*. at 11).

**D.** – On a more probable than not medical basis, E.W. has a minor physical feature contributing to her minor fine motor function problems, and she is improving in fine motor ability with assistance from her teacher. (*Id*. at 12).

**E.** – On a more probable than not medical basis, E.W. does not have medical conditions due to vinyl chloride exposure, but she has dry skin resulting in her rash from local irritation. E.W. has a family history of allergies, and her mother had no prenatal care. (*Id*. at 13).

Similarly for C.W., Dr. Weinraub offers the following opinions:

**A.** – As specified below, I have determined to a reasonable degree of medical certainty that C.W.'s GI issues were more likely than not caused by GER and/or viral gastroenteritis and not by exposure to vinyl chloride. (*Id*. at 13).

**B.1.** – On a more probable than not medical basis, C.W. had GER, a physiologic condition of healthy infants, causing his spitting up symptoms. (*Id*. at 14).

**B.2.** – C.W.'s rectal bleeding episodes were caused passing hard stool and not exposure to vinyl chloride. He responded with improvement when given stool softener treatment. (*Id*. at 14).

4

**B.3.** – On a more probable than not medical basis, C.W. was hospitalized due to dehydration from viral GE which responded well to rehydration, observation and slow reintroduction back to solid foods. Within reasonable medical logic, a delayed reaction to vinyl chloride is not a condition that is understood to respond to IV fluids and progressive oral re-feeding in less than 48 hours. (*Id*. at 15).

**B.4.** – C.W.'s GI issues were not caused by exposure to vinyl chloride because there is no evidence that vinyl chloride at the levels present in the well water consumed from the Woods' family well water caused GI conditions in children. (*Id*. at 15-16).

**C.1.** – An alternative hypothesis based on my learning and experience and to a reasonable medical degree of certainty given C.W.'s prenatal history is C.W. has impulse control problems due to fetal alcohol spectrum disorder. (*Id*. at 18).

**C.2.** – An alternative hypothesis based on my learning and experience and to a reasonable medical degree of certainty given C.W.'s social history after birth is C.W. has early infant mental health problems that contributed to his spitting up and current behavioral problems. (*Id*. at 19).

## Summary of Argument

The threshold issue before the Court on Plaintiffs' Motion to Exclude is whether Dr. Weinraub passes the aforementioned *Myers* three-step analysis and Rule 702. *Myers*, at 644. Therefore, Dr. Weinraub's testimony should only be admitted if the court finds that: 1) Dr. Weinraub is qualified; 2) his methodology is scientifically reliable; and 3) his testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *See id*.  Because Dr. Weinraub is not qualified, his opinions and testimony are inadmissible.

Assuming, *arguendo*, the Court finds Dr. Weinraub qualified, his methodology, when disclosed, is not scientifically reliable because it is not supported by facts and is even based on assumptions that are contrary to the evidence.  "The testimony of a well credentialed expert who employs an undisclosed methodology or who offers opinions lacking analytically sound basis must be excluded." *In re Ready-Mix Concrete*, at 39 (*citing Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000)). Accordingly, Dr. Weinraub's

opinions and testimony must be excluded for failing the second hurdle to admissibility – scientific reliability.

**1) Dr. Weinraub Is Correct When Admitting He Is Not Qualified**

Although knowing that the entire litigation centers on two children being exposed to vinyl chloride, Dr. Weinraub honestly and accurately admits that he is not an expert on vinyl chloride contamination: "I am not, I do not." (26:2-5). His CV and testimony confirm his lack of qualification to opine on issues involving vinyl chloride, chlorinated solvents, toxicology, dose, allergies, and medical causation. While his honesty is refreshing, such does not overcome his lack of qualification to provide an admissible opinion in this litigation.

Dr. Weinraub is not qualified to opine on issues involving vinyl chloride exposure

Dr. Weinraub is a pediatrician. He is not an expert on vinyl chloride, its toxicology, or even on chlorinated solvents. Dr. Weinraub admits that there are no entries on his CV, which includes his education, that relate to vinyl chloride or any chlorinated solvent (to which vinyl chloride belongs). (115:2-8). This is true because Dr. Weinraub has never seen a patient with exposure to vinyl chloride, let alone diagnosed or treated a patient known to have vinyl chloride exposure. (110:7-12; 113:13-16; 228:21-229:4). Expanding broader to encompass any chlorinated solvent experience, Dr. Weinraub still admits to have never done a case involving a chlorinated solvent. (113:20-23). He has never before been a testifying expert – or even retained – in a case involving vinyl chloride. (119:2-10).

Dr. Weinraub has also never published anything, and certainly nothing on vinyl chloride, vinyl chloride exposure, its toxicology, or chlorinated solvents. (112:8-23). He has never taught a course on vinyl chloride, submitted public comments with respect to vinyl chloride, participated

in any federal, state, or local regulatory agency regarding vinyl chloride, and he has never participated in a study or research project that included vinyl chloride. (112-113).

Neither the CV that accompanied Dr. Weinraub's report nor Dr. Weinraub's deposition testimony provide any foundation for Dr. Weinraub to be qualified as an expert. Federal Rule of Evidence 702 sets forth bases to qualify as an expert ("by knowledge, skill, experience, training, or education"), and Dr. Weinraub does not meet any of them.

The Supreme Court explained that when Rule 702 references "knowledge", "'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert,* at 590. His subjective beliefs and unsupported speculations are all Dr. Weinraub has in this case. When asked questions about vinyl chloride, Dr. Weinraub was not conversant.

- He does not know the formula for calculating dose, and acknowledges that a dose calculation is "not my field of learning." (25:25 – 26:1; 26:9-17).

- He does not know U.S. Environmental Protection Agency's cancer classification for vinyl chloride, and he does not know the rating system for the International Agency for Research on Cancer. (86:23 – 87:6). Moreover, Dr. Weinraub testifies of what "he knows that he doesn't know": "I'm aware that I do not know an agency that assigns that [cancer] risk. Whether they assign it or don't assign it, I can't answer." (87:16-19).

- He does not know whether vinyl chloride exposure would cause bleeding, inflammation, or structural damage in the gastrointestinal tract. (149:2-9, 16-21; 151:21-24).

- He does not know how the kids' dose of vinyl chloride relates to ATSDR's Minimum Risk Level, EPA's Oral Reference Dose, or EPA's Cancer Slope Factor. (159:16 – 160:9).

- He "defers the answer to a medical toxicologist" when asked about whether a child can have a delayed reaction to vinyl chloride. (181:24-25 (Textron objects as to vagueness)).

- He does not know whether vinyl chloride is a mutagen. (90:21-23 (Textron objects as to vagueness).

As a result of his lack of qualification to offer opinions on vinyl chloride, all of Dr. Weinraub's opinions and testimony should be excluded. Each of his opinions relates to whether the kids' vinyl chloride exposure caused or contributed to their multiple health problems. Without being qualified to opine on vinyl chloride exposure, Dr. Weinraub's opinions eliminating vinyl chloride as a cause are inadmissible. Consequently, his opinions B4 and B6 on E.W. and opinion B4 on C.W. are inadmissible. Moreover, the methodology in reaching his opinions of the causes of their health problems (e.g. among others cow and soy protein allergy, lactose, fetal alcohol spectrum disorder) is scientifically unreliable because he cannot rule out vinyl chloride exposure, yet his opinions attempt to do that. As a result, the remainder of Dr. Weinraub's opinions is also inadmissible.

<u>Dr. Weinraub is not qualified to opine on issues involving medical toxicology</u>

Six times in his deposition, Dr. Weinraub clearly proclaims that he is <u>not</u> a medical toxicologist: "I'm not a medical toxicologist." (132:24; 149:6-7; 150:5; 151:23; 160:1, 5-6). As a pediatrician, Dr. Weinraub is not qualified to opine on scientific, technical, or other specialized issues such as those in this case. Dr. Weinraub, for instance, is not qualified to opine as to whether the kids are at an increased risk of cancer due to their vinyl chloride exposure, yet he attempts to offer that testimony during his deposition. A pediatrician like Dr. Weinraub does not have the required "knowledge, skill, experience, training, or education" to opine on this highly specialized topic of medical toxicology. Again, Dr. Weinraub says it best himself:

> Q:  Is Carson at an increased risk of cancer as a result of his vinyl chloride exposure?
>
> > Textron's Counsel: Objection. It is vague. If you can answer that, go ahead.

> A:   My understanding of - - as a pediatrician reading the literature,
> is that he is not at an increased risk.

(88:18-25). Dr. Weinraub properly qualifies his opinion with the limitation of him being a

pediatrician; not a toxicologist. A pediatrician, who lacks the requisite qualifications such as Dr.

Weinraub, cannot reliably apply the principles of toxicology to the facts of this case. See Rule

702 ("the witness has applied the principles and methods reliably to the facts of the case.").

    Another example from Dr. Weinraub relates to his opinion that vinyl chloride was not the

cause of E.W.'s GI issues because there was no "bleeding, inflammation, or structural damage to

the GI tract". (Opinion B4 on E.W.; Weinraub Report p. 7). However, his testimony makes clear

that he does not know whether his written bases are even accurate because he is not qualified.

With regard to bleeding:
> Q:   Would these - - vinyl chloride exposure cause bleeding in the
> G.I. tract?
>
> A:    If it causes bleeding in the G.I. tract, that was what is being
> alleged in this case. So would it cause it; I'm not a medical
> toxicologist.
>
> Q:   So you don't know?
>
> A:    I don't know if it would. But certainly, there wasn't bleeding
> in the G.I. tract identified on the thorough examination.

With regard to inflammation:
> Q:   Would VC exposure cause inflammation in the G.I. tract?
>
> A:   It would be anticipated by me. Something that I would have to
> research further. But I would think that would be something that
> would be of interest.

With regard to structural damage:
> Q:   What G.I. structural damage is caused by a VC exposure?
>
> A:   I'm not a medical toxicologist, so I can't be specific on that.
> But I would have to defer to a medical toxicologist, but there
> would have to be some kind of damage for there to be G.I.
> symptoms.

(149:2-11; 149:16-21; 151:21 – 152:2). Thus, Dr. Weinraub's main attempt to eliminate vinyl chloride as a cause of E.W.'s GI symptoms is without any foundation. Dr. Weinraub is correct in that he "would have to defer to a medical toxicologist" because he lacks any knowledge, skill, experience, training, or education in this area. This recognized deficiency, however, did not stop him from offering his opinion that vinyl chloride did not cause E.W.'s GI medical problems. Additionally, Dr. Weinraub does not cite to literature to support even the basic elements of his methodology that vinyl chloride exposure causes bleeding, inflammation, or structural damage to the GI tract. Dr. Weinraub's opinion (B4 on E.W.) must be excluded.

An example for C.W. is when Dr. Weinraub opines that C.W.'s hospitalization in March 2009 was due to dehydration from viral gastroenteritis and not from vinyl chloride because "within reasonable medical logic, a delayed reaction to vinyl chloride is not a condition that is understood to respond . . . ." (Opinion B3; Weinraub Report p. 15). Dr. Weinraub then undercuts his basis during his deposition:

> Q:   You say - - can a child have a delayed reaction to vinyl chloride exposure?
>
> Textron's Counsel: Objection. Vague.
>
> A:   I would defer the answer to a medical toxicologist.

(181:21-25). Essentially, Dr. Weinraub wrote the opinion without having knowledge of his basis. To boot, Dr. Weinraub does not cite to any literature to support his basis about a delayed reaction to vinyl chloride not responding to certain treatments. Not only is Dr. Weinraub not qualified to make this opinion, as he himself testifies, but it is a mere conclusion – a "subjective belief" – "unsupported speculation". It is certainly not an admissible opinion.

Accordingly, Dr. Weinraub's proffered opinions and testimony relating to toxicology should be excluded because he is not qualified, the principles and methods of toxicology (if he even knows them) were not reliably applied, and therefore his opinions and testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue". Rule 702. The excluded opinions should include: Dr. Weinraub's opinions on E.W. (A, B4, B6, C, E) and C.W. (A, B1, B2, B3, B4, C1, C2), as well as Dr. Weinraub's testimony about the cancer risk associated with their vinyl chloride exposure (88-89), and the health risks involved with such an exposure (86).


Dr. Weinraub is not qualified to opine on issues involving allergies

Although many of his opinions relate to allergies, Dr. Weinraub makes clear that he is not an expert with respect to allergies:

Q:   Are you an expert or a specialist in allergies?

A:   No.

(137:15-17). Nevertheless, Dr. Weinraub opines on the causes of E.W.'s vomiting and other GI medical problems to be allergies; specifically, cow and soy protein allergy, lactose intolerance, and skin allergy. (Opinions A, B1, B2, E). Dr. Weinraub's CV and other testimony are consistent with his admission of not being qualified. Dr Weinraub is not qualified to opine as to allergies, so his opinions on E.W. (B1, B2, and E) should be excluded.


Even acknowledging that a "court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area", Dr. Weinraub still falls short on all

grounds. *Smith*, at 718. Dr. Weinraub should be excluded because he is not qualified to opine on, *inter alia*, vinyl chloride, vinyl chloride exposure, medical causation, medical toxicology, allergies, dose, health risks, and cancer risks. Because he does not have even a fundamental understanding of vinyl chloride exposure and admits to not being an expert, none of Dr. Weinraub's opinions or testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Rule 702. Dr. Weinraub's lack of qualification is dispositive in this Court's analysis, and his opinions and testimony should be excluded.

### 2)   Dr. Weinraub's Methodology, When Disclosed, Is Not Scientifically Reliable

The Supreme Court has repeatedly emphasized that the reliability inquiry is a flexible one; no one factor is either required in the analysis or dispositive of the outcome.  *See Smith*, at 719. Similarly, "[t]he court should afford the expert some deference because a minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2nd Cir. 2002). Even in light of this standard, Dr. Weinraub's lack of sufficient facts, the contrary evidence, and unreliable application of principles to the facts of this case render his opinions and testimony inadmissible.

<u>Dr. Weinraub's methodology is flawed because it is either not supported by the evidence or is contrary to the evidence</u>

Rule 702 expressly requires that the proffered expert testimony be "based upon sufficient facts or data".[5] This means that to be "admissible under Rule 702, expert's opinion must find

---

[5] It is noteworthy that Dr. Weinraub created a 70-page rough draft of his report on May 8, 2012, which was more than one month before his examination of the kids. (30:23; Weinraub dep. Ex. 402). More telling is that this report was prepared a day before Dr. Weinraub's formal involvement in the case. (32:21 – 33:4). What "facts or data" Dr.

factual support in the record." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 530 (6th Cir. 2008). While the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact," the factual underpinning must still be present. *Smith*, at 718. Without the requisite evidentiary support, the testimony cannot be "based upon sufficient facts or data". As a result, the proffered opinions violate Rule 702 and do not pass the gatekeeper.

As discussed above, all of Dr. Weinraub's opinions regarding vinyl chloride amount to only "subjective beliefs" and "unsupported speculation" because he does not have knowledge sufficient to render a reliable opinion. *See In re Ready Mix Concrete*, at 39-40 ("In assessing an expert's methodology, the court must rule out subjective belief or unsupported methodology.").

The law contemplates situations where an expert may base his opinion on empirical assumptions, but the law is clear that "those assumptions must be supported by evidence." *Id.* at 41. Furthermore, assumptions that are used by an expert to form an opinion must not be contrary to the evidence, or they are subject to exclusion. *Id.* at 42.

In support of his opinions (B6 on E.W. and B4 on C.W.) that the kids' GI issues were not caused by vinyl chloride, Dr. Weinraub cites to "no reports of the Woods' family dogs, the parents or prior residents having GI symptoms from the well water." (Weinraub Report pp. 9, 16). When asked his basis with respect to the lack of reports, Dr. Weinraub testified that he relied on depositions of Mr. and Mrs. Wood and medical records. (155-156). Neither the depositions nor medical records discuss whether the Woods' family dogs, the parents, or prior residents were ill because of the contaminated well water. No deposition page and line number can be given because there is just nothing in there to support Dr. Weinraub's assumptions. Amazingly, Dr.

---

Weinraub had prior to his involvement in the matter to allow him to generate reliable testimony under Rule 702 is not apparent in the record.

Weinraub admits that he, in fact, does <u>not</u> know anything about the prior residents' medical problems:

> Q:   Have you spoken to prior residents of the Wood home?
>
> A:   No, I have not.
>
> Q:  What do you know about their exposure and medical problems, if anything?
>
> A:   I did not get information in that area.
> …
>
> Q:   Did counsel provide you with facts or assumption regarding the prior family?
>
> A:   I don't have a memory of that.

(155:19 – 156:7). When asked about his basis to write that Mr. and Mrs. Wood did not have symptoms from the exposure, Dr. Weinraub states that he has "never read that in any of the reports." (156:8-13). He then confirms that he made no other inquiry. Mr. and Mrs. Wood are not plaintiffs in this litigation, so it should not be a surprise that their medical histories are not included in the reports. Furthermore, Dr. Weinraub is mistaken in testifying that he has some of Mr. and Mrs. Wood's medical records, as none have ever been produced. Lastly, the only deposition testimony about Wood family pets is that the fish died due to the "toxin water." (J. Wood deposition 139:10-13, which is attached hereto as <u>Ex. D</u>). In short, Dr. Weinraub has no "facts or data", let alone "sufficient facts or data" to support his opinions B6 and B4.

Opinions C1 and C2 for C.W. (relating to his behavior) are also subject to exclusion because Dr. Weinraub's methodology is scientifically unreliable. To start, Dr. Weinraub is unable to offer an explanation of how he ruled our vinyl chloride as the cause for C.W.'s behavioral problems. In fact, Dr. Weinraub remains open that vinyl chloride could be the cause:

> Q:   Have you ruled out any relation to vinyl chloride exposure?

> A:   I have - - I remain open to information which may be
> forthcoming.

(185:3-16).

Dr. Weinraub opines (C1) that C.W. has impulse control problems due to fetal alcohol spectrum disorder ("FASD"). Yet, Dr. Weinraub testifies that his statement about prenatal alcohol exposure is "a hypothesis that requires further assessment." (11:3-13). More importantly, Dr. Weinraub did not find that C.W. even has FASD: "I was looking for fetal alcohol spectrum disorder. I would say that it's undetermined from my exam." (51:12-14). Despite his hypothesis requiring further assessment and an assessment that revealed nothing, Dr. Weinraub nevertheless opines to a reasonable degree of medical certainty that "C.W. has impulse control problems due to fetal alcohol spectrum disorder." (Weinraub Report p. 18).

This opinion suffers from more flaws. Dr. Weinraub does not have any evidence that C.W.'s birth mother used alcohol during pregnancy, so he writes that C.W. has a "birth history of probabl[e] drug and alcohol exposure." (Weinraub Report p. 16; 185:17-21)(emphasis added). There is, in fact, evidence to the contrary that the birth mother did not use alcohol during pregnancy. Dr. Weinraub recognizes this evidence but decides not to follow it: "Although the mother denied alcohol use and the drug test at the time of C.W.'s birth was clean for illegal drugs . . . ." (Weinraub Report p. 17). Dr. Weinraub's opinion that C.W. had prenatal alcohol exposure is erroneous, unsupported, and even countered by the evidence. Finally, Dr. Weinraub does not cite to any literature to support his statement that children with FASD have poor impulse control; rather, he references his belief "that there is a psychologist in Oregon that may have that." (190:22-25).

As for Dr. Weinraub's second opinion on C.W.'s behavior (C2), it is inadmissible because it is entirely unsupported speculation. Dr. Weinraub argues that "C.W. has early infant

mental health problems that contributed to his spitting up and current behavioral problems." (Weinraub Report p. 19). The only problem is that Dr. Weinraub knows <u>nothing</u> about C.W.'s early infant health. He argues in support of his opinion that 1) C.W.'s history of his first 11 weeks is "not known", 2) C.W.'s mother suddenly decided to go ahead with the adoption after stopping the adoption at birth, and 3) "unknown medical events, family stressor and family events may have contributed to problems". (Weinraub Report p. 18-19). Dr. Weinraub admits to not knowing about C.W.'s first 11 weeks and of any medical events, family stressors, and family events, and he testifies that he similarly does not know why the adoption did not go through at birth. (196:131-16 (Q: "Do you know why the adoption did not go through at birth?" A: "I would only have to guess, so I don't know."). Again, Dr. Weinraub's honesty is appreciated but his opinion is clearly nothing more than admitted speculation. This opinion is not admissible.

As if the above is not sufficient to exclude this opinion, Dr. Weinraub cites his reason for his opinion as his experience in cases "involving child abuse and neglect, early nurturing and feeding problems, maternal depression, family violence, and subtle infant abuse." (Weinraub Report p. 19). In his deposition, Dr. Weinraub testified that he does not have any evidence of these issues being present in this case: "There is no evidence of any of the things you are asking, and there's an absence of evidence in this case also. So I can't answer." (197:17-20). Again, Dr. Weinraub summarizes Plaintiffs' objections pretty well himself.

Dr. Weinraub also violates the reliability standard by using assumptions that are contrary to the evidence. For instance, Dr. Weinraub bases his opinion (B4 on E.W.) that vinyl chloride did not cause her GI issues because there was no bleeding in her tract. However, in the same section of his report, Dr. Weinraub highlights E.W.'s bleeding: "E.W. was admitted to Riley

Children's Hospital . . . because of worsening symptoms of abdominal pain and bloating <u>and a positive stool test for blood</u>." (Weinraub Report p. 8)(emphasis added).

Opinion B1 on E.W. is similarly based on an assumption that is contrary to the evidence. Dr. Weinraub argues that E.W. showed improvement in her vomiting and discomfort while on special formulas. The testimony from E.W.'s babysitter is that there was no improvement noted on any formula changes. In fact, E.W. worsened over time: "But as time went on nothing got better, it got worse." (Deposition of J. Richter 29:4-12, 30:15-22, 45:3-6, which is attached hereto as <u>Ex. C</u>). E.W.'s alleged improvement is also used as a basis for Dr. Weinraub's B2 and B3 opinions, so they, too, are undermined by this contrary evidence.

Dr. Weinraub's patient history taken during his examination provides additional contrary evidence to his assumptions for concluding that E.W.'s GI issues were caused by lactose intolerance. "On another page, mom says no lactose intolerance noted in the past. No special lactose-free milk was ever used. Then I get further that [E.W.] likes vanilla ice cream." (62:4-8). Additionally, Dr. Weinraub did not test for any cow or soy protein allergy or for lactose intolerance even though tests exist for making these diagnoses. (Weinraub dep. 140:23 – 141:4; 145:1-11). The assumptions made by Dr. Weinraub to support these 3 opinions (B1, B2 and B3 for E.W.) are contrary to the evidence.

Consequently, Dr. Weinraub's above-referenced opinions must be excluded because there does not exist "sufficient facts or data" to support the opinions, with some opinions even having evidence contrary to Dr. Weinraub's assumptions.

<u>Dr. Weinraub did not disclose his methodology; just conclusions</u>

By not disclosing his methodology, Dr. Weinraub's resulting conclusions are subject to exclusion. "An expert report must include 'how' and 'why' the expert reached a particular result; not merely the expert's conclusory opinions." *Salgado by Salgado v. GMC,* 150 F.3d 735, 741 (7th Cir. 1998); *Zamecnik*, at 881 ("Mere conclusions, without a 'hint of an inferential process' are useless to the court."). Rather than setting forth an argument for why Dr. Weinraub disagrees with Plaintiffs' expert, Dr. Weinraub merely writes conclusions such as:

- "Dr. Byers incorrectly relies on the studies of workers exposed to high concentrations of vinyl chloride by inhalation and was inaccurate in her conclusion that vinyl chloride taken orally in E.W.'s formula caused her GI symptoms." (Weinraub Report pp. 10, 16 (for C.W.)).

- "Plaintiffs' experts are inaccurate in their concern that E.W. may have neurological damage due to vinyl chloride. She exhibits no evidence of neurologic damage." (Weinraub Report p. 11).

- "Plaintiffs' experts are inaccurate in their conclusion that E.W. has neurologic problems manifesting as fine motor problems." (Weinraub Report p. 12).

- "Dr. Byers is inaccurate to conclude that E.W has skin problems due to vinyl chloride exposure." (Weinraub Report p. 12).

- "Plaintiffs' experts' opinion that vinyl chloride caused problems in C.W.'s brain development is an unproved hypothesis." (Weinraub Report p. 18 and 19).

Dr. Weinraub, though not qualified to discuss medical toxicology, attempts in the above conclusions to criticize the conclusions reached by Plaintiffs' experts. Stating, for example, his disagreement in Dr. Byers extrapolating from occupational studies is "useless" to the trier of fact because he 1) lacks the requisite qualification and 2) does not support his critique with his own analysis. At the most, Dr. Weinraub disagrees with Plaintiffs' experts' <u>conclusions</u> because he

never addresses their methodology. Accordingly, even if Dr. Weinraub's conclusory statements were admissible, such do not influence the admissibility of Plaintiffs' experts' well-reasoned, scientifically reliable opinions. *See Daubert*, at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

Dr. Weinraub even refuses to provide his analysis when asked about his opinion that vinyl chloride did not cause C.W.'s behavioral problems (C1 and C2):

> A:   There's nothing to substantiate. I'm confident in my opinion
> that vinyl chloride is not a cause of his behavior problems.

(200:12-16). Dr. Weinraub is so confident in his differential diagnosis that he does not feel the need to discuss it. Without the "how" and "why" Dr. Weinraub reached this conclusion, the opinion is just that – only a conclusory opinion that is not admissible. *See Salzado,* at 741.

In the end, Dr. Weinraub's opinions without a known methodology must be excluded: "The testimony of a well credentialed expert who employs an undisclosed methodology or who offers opinions lacking analytically sound basis must be excluded." *In re Ready-Mix Concrete*, at 39 (*citing Tuf,* at 591).

### Conclusion

Textron has proffered Dr. Weinraub as an expert to offer expert testimony regarding the cause of medical problems suffered by C.W. and E.W., opine as to the kids' increased risk of cancer as the result of their exposure to vinyl chloride, and to criticize Plaintiffs' experts. Dr. Weinraub followed his orders given by Textron, but he is simply beyond his area of expertise. Despite his admitted limitations, Dr. Weinraub generates opinions using assumptions that lack evidentiary support, and in fact, are contrary to the evidence. The methodology used by Dr. Weinraub, when disclosed, fails to meet the criteria for admissibility under Rule 702, *Daubert*,

and controlling and persuasive case law.   Consequently, this court should exclude Dr. Weinraub's opinions and testimony.


Respectfully submitted,

**STEWART & IRWIN, P.C.**


By    *s/Nicholas Gahl*
       Donn H. Wray (Atty. No. 1643-49)
       dwray@silegal.com
       James W. Brauer (Atty. No. 3649-49)
       jbrauer@silegal.com
       Glenn D. Bowman (Atty. No. 4085-49)
       gbowman@silegal.com
       Nicholas K. Gahl (Atty. No. 27842-49)
       ngahl@silegal.com
       Marc A. Menkveld (Atty. No. 29381-32)
       mmenkveld@silegal.com
       251 East Ohio Street, Suite 1100
       Indianapolis, Indiana  46204
       Phone:  (317) 639-5454
       Fax:  (317) 632-1319
       ***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2012, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

Frank J. Deveau
fdeveau@taftlaw.com
William C. Wagner
wwagner@taftlaw.com
David L. Guevara, Jr.
dguevara@taftlaw.com
Bradley R. Sugarman
bsugarman@taftlaw.com
Michael D. Chambers
mchambers@taftlaw.com
Geoffrey G. Slaughter
gslaughter@taftlaw.com
John D. Papageorge
jpapageorge@taftlaw.com
Michele L. Richey
mrichey@taftlaw.com
**TAFT STETTINIUS & HOLLISTER LLP**
One Indiana Square, Suite 3500
Indianapolis, Indiana  46204
***Attorneys for Textron, Inc.***

                        *s/Nicholas Gahl* _____